McKinney, J.,
delivered the opinion of the court.
This is a bill for distribution of the estate of William Dardis, deceased, who died intestate, and without issue, in Franklin county, Tennessee, in the year 1845.
The intestate was bom in Ireland, whence he emigrated in 1847. Shortly afterwards he became a resident of this State, and was naturalized. He left several relations, resident in this State, at the time of his death; namely, James Dardis, a brother, who is since dead, leaving issue ; the complainants, Margai'et and Mary, children of Edward Dardis, another brother, who died in this State in the life-time of the intestate; and the defendant, John D. Traynor, son of Catherine Tray-nor, who was the sister of intestate. Traynor and his wife, the parents of the defendant John D., both died in Ireland, in the life-time of intestate, leaving two other children, one of whom is still living, and resident in the latter Kingdom.
The defendant Traynor was a naturalized citizen previous to the death of intestate. The complainants, Margaret and Mary, were born in Ireland, but immigrated with their father to the United States during minority. The proof makes it probable that their father was naturalized.
Upon this state of facts, the bill assumes that the complain *293 ants Margaret and Mary, and the children of James Dardis, are entitled to the entire estate of the intestate, which consisted of both real and personal property, in exclusion of the defendant Traynor. It is argued that as he traces his descent through his mother, who was an alien, and therefore herself incapable of inheriting, he is equally incapable of taking, by representation through her.
By the common law this proposition is unquestionably correct ; but by the law of this State, as it stood at the death of the intestate, it is wholly incorrect. This rule of the common law was modified by the act of 1809, ch. 53, which, though repealed by the act of 1848, ch. 165, sec. 1, furnishes the rule for the decision of this case, as the rights of the parties arose and became vested under that act. The 1st section of the act of 1809 provides that, “In all cases where any person within this State shall die intestate, without issue, and possessed of any estate, real or personal, the said estate, and every part thereof, shall descend to such person or persons who are next of kin to the decedent, and resident within the United States, to the perpetual exclusion of aliens who might be related to the said decedent in a nearer degree,” &c. It is obvious that the sole object of this enactment is to confer upon certain persons the capacity to take by descent, in cases where, by the common law, they were held to have no “inheritable blood,” and consequntly were incapable of taking, by reason of alien-age. The persons upon whom this capacity was bestowed, are the next of kin resident within the United States, without regard to whether they are naturalized citizens or aliens; and also irrespective of the degree of consanguinity in which they stand to the intestate; that is, the resident next of kin, though related in a more remote degree, shall inherit in exclusion of the' non-resident next of kin who may be related in a nearer degree. In other words, such resident next of kin shall inherit just as if there were no other persons next of kin *294 to the intestate in existence. The effect of this statute is, that •contrary to the rule of the common law, the course of descent is not broken or changed by the alienage of the ancestor of the resident next of kin; but, on the contrary, the ' resident next of kin will take just in the same manner as if such alien ancestor had been a resident or naturalized citizen, and were •dead.
It has been supposed that the act of 1809 was designed to apply exclusively to cases where there was no next of kin within the jurisdiction of the United States, qualified to inherit by the common-law rules of descent and distribution, and that if in fact there were any resident next of kin so qualified, they would be entitled to take the estate to the exclusion of other next of kin, who, though resident in the United States at the death of intestate, were not so qualified. Such, we think, is not the proper construction of the act. The new inheritable capacity which this anomalous statute confers, places persons who, previous to its passage, were disabled to take by descent, on the same footing with those who were capable of inheriting. Neither are the words “next of kin,” as used in this statute to be taken to mean nearest of kin, as was suggested in argument; so as, among the several “relations” of the intestate, in unequal -degrees of consanguinity to entitle those related in the nearest degree to take the estate in exclusion of those related in a more remote degree. The words are to be construed as used in the sense appropriated to them in the statutes of distribution.
Nor is the defendant Traynor to take a less interest in the estate because he may have a sister living in Ireland: she has no interest, is not recognised by the law, and he by the statute is made the sole representative of his mother.
The result is, that on the death of the intestate, his estate, real and personal, descended to the defendant Traynor equally with the surviving brother, and the children of Edward Dardis, *295 the complainants in this cause. The complainants will therefore be entitled, by representation of their deceased father, to one third of said estate ; the children of James Dardis, in like manner, to one third; and the defendant, Traynor, under the statute, to the remaining one-third.
The Chancellor having so adjudged, the decree will be affirmed.